**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| FOREST INVESTMENT ASSOCIATES L.P., ) ) ) Plaintiff, ) ) v. ) ) ) APRIL THOMPSON AND ) JAMES THOMPSON, ) ) ) Defendants. ) | CIVIL ACTION<br><br>FILE NO 5:19-cv-00065<br><br>**JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT**

                                                                                   Giselle S. Guerra
                                                                                    Texas Bar No. 24075173
1001 Fannin Street
Suite 3700
Houston, TX 77002
Phone: (713) 470-6100
giselleguerra@eversheds-sutherland.com
S. Lawrence Polk *(pro hac admission pending)*
Georgia Bar No. 582959
Olga Greenberg *(pro hac admission pending)*
Georgia Bar No. 307731
999 Peachtree Street NE
Suite 2300
Atlanta, GA 30309
Phone: (404) 853-8000
larrypolk@eversheds-sutherland.com
olgagreenberg@eversheds-sutherland.com


**Counsel for Forest Investment Associates L.P.**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1
THE PARTIES ............................................................................................................... 2
JURISDICTION AND VENUE ..................................................................................... 2
BACKGROUND FACTS .............................................................................................. 3
COUNT ONE: TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION ................................................................................................................ 5
COUNT TWO: FRAUD ................................................................................................. 6
COUNT THREE: BREACH OF FIDUCIARY DUTY ................................................. 7
COUNT FOUR: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ..... 7
COUNT FIVE: NEGLIGENCE ..................................................................................... 8
COUNT SIX: CONSPIRACY ....................................................................................... 9
COUNT SEVEN: CONVERSION ................................................................................ 9
COUNT EIGHT: FEDERAL RICO .............................................................................. 9
COUNT NINE: GEORGIA RICO (O.C.G.A. § 16-14-1 *et seq.*) ............................. 11
COUNT TEN: TEXAS THEFT LIABILITY ACT (TEX. CIV. PRAC. & REM. CODE §§ 134.001 *et seq.*) .......................................................................................... 12
COUNT ELEVEN: UNJUST ENRICHMENT .......................................................... 14
COUNT TWELVE: ACCOUNTING AND EQUITABLE AND INJUNCTIVE RELIEF ..... 15
COUNT THIRTEEN: APPOINTMENT OF RECEIVER .......................................... 15
COUNT FOURTEEN: PUNITIVE DAMAGES ........................................................ 15
COUNT FIFTEEN: ATTORNEYS' FEES ................................................................. 16
PRAYER FOR RELIEF ............................................................................................... 16

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| FOREST INVESTMENT ASSOCIATES L.P., )<br>)<br>)<br>    Plaintiff, )<br>) <br>v. )<br>)<br>)<br>APRIL THOMPSON AND )<br>JAMES THOMPSON, )<br>)<br>)<br>    Defendants. ) | CIVIL ACTION<br><br>FILE NO. _____<br><br>**JURY TRIAL**<br>**DEMANDED** |

**VERIFIED COMPLAINT**

Forest Investment Associates L.P. ("Plaintiff" or "FIA") files this Verified Complaint against Defendants April Thompson and James Thompson (collectively, "Defendants"), and shows as follows:

**INTRODUCTION**

This is an action brought to seek redress and emergency relief with respect to Defendants' illegal and fraudulent conduct, which has resulted in the theft of at least $4 million. The facts of this case show a straightforward pattern of fraudulent conduct.

FIA is engaged in the business of providing timberland investment advisory and management services to institutional timberland investors in a variety of locations. FIA retains consultants to provide technical, administrative and field management services to its clients. The consultants in turn retain contractors to carry out certain field services. The contractor submits its invoices for services rendered to the consultant, who then enters the invoices for payment through FIA's electronic invoice processing system. The invoices are then paid by FIA to the contractors from the applicable client's funds held in bank accounts controlled by FIA.

1

In the present case, FIA retained Kingwood Forestry Services, Inc. ("Kingwood") as the consultant for numerous timber properties. At all times material hereto, Kingwood employed Defendant April Thompson, who was responsible for the administrative supervision and payment of contractors.

April Thompson is married to James Thompson. Defendants entered into a fraudulent scheme whereby April Thompson caused James Thompson to be retained as a contractor by Kingwood to provide services to FIA's clients. Since at least 2011, Defendants created false invoices for services claimed to have been performed for the benefit of FIA's clients. April Thompson, as an employee of Kingwood, submitted the invoices for payment through FIA's electronic invoice processing system. Unbeknownst to Plaintiff, James Thompson did not perform the services described in said invoices. As part of their fraudulent scheme, one or both of the Defendants was paid over $4 million for services never actually rendered.

In the pertinent agreements between FIA and its affected clients, FIA is obligated to indemnify its clients for fraud, negligence or other unlawful acts by contractors. FIA has advised its affected clients that they will be made whole. FIA now seeks recovery of these funds and is entitled to injunctive relief and compensatory damages, along with punitive damages and its attorneys' fees.

## THE PARTIES

1. Plaintiff is a Delaware limited partnership with its principal place of business in Atlanta, Georgia.

2. Defendants April Thompson and James Thompson are citizens of the state of Texas, and maintain their personal residence in this judicial district.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction to hear this

matter, as Plaintiff is completely diverse in citizenship from every Defendant, and the amount in controversy exceeds the sum of $75,000.00.

4. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction to hear this matter, as some of the claims arise out of the laws of the United States.  Pursuant to 28 U.S.C. § 1367 this Court also has supplemental and ancillary jurisdiction over the claims arising out of the laws of the States of Texas and Georgia.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district as it is the judicial district in which a substantial number of the events or omissions giving rise to these claims occurred, and this judicial district has personal jurisdiction over Defendants who reside in or do business in Texas.

## BACKGROUND FACTS

6. FIA, formed in 1986, is a Registered Investment Adviser providing timberland investment advisory and management services for institutional timberland investors.  FIA is based in Atlanta, Georgia, and acquires and manages timberland portfolios for ERISA pension plans, state and municipal retirement systems, endowments, foundations and family offices.

7. One component of FIA's business is to provide timberland management services on behalf of its clients.  FIA retains consultants in order to provide on-site management services for its clients.  These consultants in turn retain contractors to carry out certain field services, subject to an agreed-upon annual management budget.  The consultant is fully responsible for the performance of the contractor.

8. In order to provide such services FIA enters into Timberland Management Consulting Agreements with various consultants, who agree to provide field services and related services to FIA's clients in order to increase the value of their timber portfolios.  Pursuant to the pertinent agreements with its clients, FIA agrees to indemnify its clients from and against any and

all claims, demands, or actions of liability of any nature arising out of the negligence, bad faith, willful misconduct, or violation of any law or regulations by FIA, its consultants, partners, officers, agents, or employees.  As a Registered Investment Adviser, FIA owes a fiduciary duty to its clients.

9. Attached hereto and marked as **Exhibit A** is a true and correct copy of a typical Timberland Management Consulting Agreement FIA entered into with Kingwood relating to property owned by a client of FIA that was a victim of Defendants' fraud.  As described above, Kingwood agreed to retain certain contractors to provide field services on behalf of FIA's clients, subject to an agreed-upon annual budget.  Kingwood would submit invoices from contractors to FIA for payment through FIA's electronic invoice processing system.  The invoice would then be paid by FIA to the contractor from the applicable client's funds held by FIA in a bank account controlled by FIA.

10. Kingwood employed Defendant April Thompson, who was responsible for the administrative supervision and payment of contractors.  One such purported contractor was Defendant James Thompson, who at all times material hereto has been married to Defendant April Thompson.

11. Defendants knew or should have known of the fiduciary relationship between FIA and its clients.

12. Upon information and belief, in 2011 Defendants entered into a fraudulent scheme whereby the Defendants would prepare invoices for services purportedly rendered by James Thompson as a contractor to FIA's clients, and April Thompson would submit the invoices for payment through FIA's electronic invoice processing system.  In order to avoid detection, April Thompson monitored the invoices submitted in order to ensure that, in many cases, they were within the annual budget for each property and that they were otherwise aligned with planned and

4

customary activities that were consistent with management of the property.

13.     Pursuant to the aforesaid scheme, Defendants submitted over $4 million worth of bogus invoices for payment through FIA's electronic invoice processing system. Payments were then mailed to Defendant James Thompson by FIA from the funds of clients who owned the affected property.

14.     Defendant James Thompson did not provide the services described in the invoices sent for payment through FIA's electronic invoice processing system. Defendant April Thompson was aware of the scheme and facilitated the presentation of the fictitious invoices, and, upon information and belief, personally benefitted from the payments made by FIA's clients on said invoices.

15.     FIA owes a fiduciary duty to its clients who were victimized by this scheme. FIA is obligated to indemnify the affected clients under certain agreements and has advised the affected clients that they will be made whole.

16.     Copies of a portion of the dozens of checks received and negotiated by Defendant James Thompson pursuant to the aforesaid scheme are attached hereto as **Exhibit B**.

## COUNT ONE
**TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION**

17.     Plaintiff realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

18.     Plaintiff seeks a temporary restraining order and interlocutory injunction (a) ordering Defendants to deposit with the Registry of the Court any and all monies received pursuant to the aforesaid fraudulent scheme; (b) enjoining Defendants from transferring, selling or otherwise disposing of any property acquired with monies received pursuant to the aforesaid fraudulent scheme; and (c) appointing a receiver over Defendants' assets to ensure that the monies received pursuant to the aforesaid fraudulent scheme, and any property acquired with said monies,

are not dissipated.

19. An injunction is necessary in order to maintain the status quo, and to ensure that Defendants do not distribute any funds or property Defendants obtained pursuant to the aforesaid fraudulent scheme.

20. Without injunctive relief, Plaintiff will suffer irreparable harm because the monies obtained from Plaintiff's clients, whom Plaintiff has agreed to indemnify, will be converted and stolen.

## COUNT TWO
## FRAUD

21. Plaintiff realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

22. In an effort to induce Plaintiff's clients to pay monies to Defendant James Thompson, Defendants represented that Defendant James Thompson provided the services described in each invoice submitted through FIA's electronic invoice processing system.

23. Defendants made these representations and assurances with the knowledge that they were false. Defendant James Thompson did not provide any of the services described in the invoices submitted by Defendants. These representations and assurances were made knowingly, recklessly, and maliciously, and Plaintiff justifiably relied on said representations to its detriment.

24. Plaintiff reasonably relied upon Defendants' misrepresentations and caused the fraudulent invoices to be processed for payment through FIA's electronic invoice processing system. Plaintiff's clients in fact paid over $4 million to Defendants in reliance upon their fraudulent representations, and Plaintiff has agreed to indemnify these clients for their losses suffered as a result of this scheme.

25. As a result of Defendants' fraudulent conduct, Plaintiff has been damaged in an amount to be determined at trial, but no less than $4 million.

## COUNT THREE
### BREACH OF FIDUCIARY DUTY
(Defendant April Thompson)

26. Plaintiff realleges the allegations in the foregoing paragraphs as though fully set forth herein.

27. Plaintiff and Defendant April Thompson had a relationship of trust and confidence. Plaintiff trusted Defendant April Thompson to properly vet and submit invoices from contractors providing services on properties owned by FIA's clients such as Defendant James Thompson. As such, she owed certain fiduciary duties to Plaintiff, including the duty to act in good faith and in the best interests of Plaintiff.

28. Defendant April Thompson breached her fiduciary duty by knowingly allowing and enabling her husband, Defendant James Thompson, to submit false and fictitious invoices for payment through FIA's electronic invoice processing system, knowing that FIA's clients would make payment to Defendant James Thompson in reliance on said invoices.

29. Defendants' misconduct was willful, reckless, malicious, deceptive, and likely criminal, entitling Plaintiff to an award of punitive damages in an amount to be determined at trial.

30. As a result of Defendant April Thompson's breach of fiduciary duty, Plaintiff's clients paid over $4 million to Defendants in reliance upon the fraudulent invoices, and Plaintiff has agreed to indemnify these clients for their losses suffered as a result of Defendants' scheme. Therefore, Plaintiff has been damaged in an amount to be determined at trial, but no less than $4 million.

## COUNT FOUR
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
(Defendant James Thompson)

31. Plaintiff realleges the allegations in the foregoing paragraphs as though fully set forth herein.

7

32. Liability for aiding and abetting a breach of fiduciary duty exists when there is a fiduciary relationship, a breach of a fiduciary duty, and knowing participation in that breach by the defendant who is not a fiduciary.

33. As set forth above, Defendant April Thompson owed a fiduciary duty to Plaintiff regarding the performance of her duties at Kingwood.  Defendant April Thompson breached her fiduciary duty to Plaintiff by knowingly allowing her husband, Defendant James Thompson, to submit false and fictitious invoices for payment through FIA's electronic invoice processing system, knowing that FIA's clients would make payment to Defendant James Thompson in reliance on said invoices.  Defendant James Thompson knew or should have known that Plaintiff placed trust and confidence in Defendant April Thompson.

34. Defendant James Thompson knowingly aided and abetted Defendant April Thompson with respect to her repeated violations of her fiduciary obligations in connection with the fraudulent scheme described above.

35. As a direct and proximate result of the aiding and abetting in the breach of fiduciary duty by Defendant April Thompson, Plaintiff has been damaged in an amount to be determined at trial, but no less than $4 million.

## COUNT FIVE
## NEGLIGENCE

36. Plaintiff realleges the allegations in the foregoing paragraphs as though fully set forth herein.

37. Defendants owed a legal duty to Plaintiff with respect to the services purportedly rendered by Defendant James Thompson and the false invoices submitted by Defendants through FIA's electronic invoice processing system.

38. Defendants' actions described above were intentional and reckless.  At a minimum, Defendants were negligent or grossly negligent with respect to the fraudulent scheme described

above.

39. As a proximate result of Defendants' negligence, Plaintiff has been damaged in an amount to be determined at trial, but no less than $4 million.

## COUNT SIX
## CONSPIRACY

40. Plaintiff realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

41. Defendants conspired with each other and on behalf of each other to commit fraud against Plaintiff and its clients.

42. As a result of their conspiracy, Plaintiff has been damaged in an amount to be determined at trial, but no less than $4 million.

## COUNT SEVEN
## CONVERSION

43. Plaintiff realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

44. Defendants illegally acquired over $4 million by virtue of the fraudulent scheme described above. Plaintiff has agreed to indemnify its clients who were harmed as a result of Defendants' fraudulent conduct.

45. Defendants are exercising unauthorized dominion over the funds and have thereby converted the funds to their own use.

46. As a result of this conversion, Plaintiff has been damaged in an amount to be determined at trial, but no less than $4 million.

## COUNT EIGHT
## FEDERAL RICO

47. Plaintiff realleges the allegations in the foregoing paragraphs as though fully set forth herein.

9

48. Defendants, acting in conspiracy, connection, and concert with each other were associated in fact and collectively constituted an enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Thompson Enterprise"). Defendants are each a "person" within the meaning of 18 U.S.C. § 1961(3).

49. The Thompson Enterprise engages in and affects interstate commerce by providing services within the United States and also by collecting payment for those services within the United States.

50. The Thompson Enterprise functions under the leadership of Defendants, who personally conduct the day-to-day operations of the enterprise.

51. The Thompson Enterprise has functioned as a continuous and ongoing unit from at least 2011. The Thompson Enterprise had the common and shared purposes of obtaining monies from FIA and its clients pursuant to the fraudulent scheme described herein.

52. Defendants conducted the Thompson Enterprise's affairs through a pattern of racketeering, which included the commission of wire fraud and mail fraud, in violation of 18 U.S.C. §§ 1341 and 1343, in furtherance of a scheme to defraud FIA and its clients.

53. Defendants committed wire fraud and mail fraud through the Thompson Enterprise with the specific intent to deceive and defraud FIA and its clients.

54. These predicate acts all are related in that they were all directed toward FIA and its clients for the purpose of illegally obtaining monies from FIA and/or its clients under false pretenses. These predicate acts all occurred within a ten-year period.

55. Defendants' specific intent to deceive, to participate in the RICO enterprise and to engage in a pattern of racketeering, and to conduct the predicate acts, is shown by documents and testimony showing, inter alia, that they each were aware of the falsity of invoices and other documents they made in support of their scheme or artifice to defraud, or for obtaining money or

10

property by means of false or fraudulent pretenses, representations, or promises.

56. Mail fraud and wire fraud both constitute "racketeering activity" as that term is defined in 18 U.S.C. § 1961(1)(b). By the foregoing acts, Defendants have conducted or participated in the affairs of the Thompson Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

57. Plaintiff FIA is a "person" within the meaning of 18 U.S.C. § 1961(3).

58. Plaintiff FIA was injured in its business and/or property, by reason of Defendants' violations of 18 U.S.C. § 1962(c) through the Thompson Enterprise. Specifically, FIA is contractually obligated to indemnify its clients with respect to their losses suffered as a result of Defendants' fraudulent scheme and has incurred substantial fees and expenses during the course of its investigation of Defendants' fraudulent scheme.

59. Pursuant to 18 U.S.C. § 1964(c), Plaintiff FIA is entitled to recover from Defendants, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorney's fees.

## COUNT NINE
## GEORGIA RICO (O.C.G.A. § 16-14-1 *et seq*.)

60. Plaintiff realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

61. Defendants intentionally conducted and participated in a scheme to defraud Plaintiff by engaging in a pattern of racketeering activity. Plaintiff was harmed by this scheme when Defendants submitted invoices through FIA's electronic invoice processing system located in Georgia, and said invoices were transmitted to and paid by FIA from the clients' funds.

62. In order to perpetuate the scheme to defraud, Defendants engaged in a pattern of racketeering activity, including theft by deception and conversion, wire fraud and mail fraud. Some of the harm and injury from this scheme was inflicted in the State of Georgia.

63. Defendants transmitted, or caused to be transmitted, fictitious invoices to Plaintiff via internet services and web mail in furtherance of the scheme to defraud and accepted and negotiated checks sent to them by United States mail.

64. Defendants knowingly and intentionally targeted Plaintiff in their scheme to defraud and intended for Plaintiff to rely upon false and misleading statements and omissions regarding the services purportedly rendered by Defendant James Thompson, and false invoices submitted to FIA for payment by its clients.

65. Plaintiff reasonably relied on Defendants' misrepresentations and omissions by accepting the fictitious invoices for payment and causing payment to be made on said invoices.

66. As a direct and proximate result of such reliance, Plaintiff has been damaged in an amount to be determined at trial, but no less than $4 million.

67. Plaintiff is entitled to treble damages of no less than $12 million, punitive damages, attorneys' fees, and costs of litigation pursuant to O.C.G.A. § 16-14-6(c).

## COUNT TEN
## TEXAS THEFT LIABILITY ACT
## (TEX. CIV. PRAC. & REM. CODE §§ 134.001 *et seq.*)

68. Plaintiff realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

69. Plaintiff brings this action under the Texas Theft Liability Act for an unlawful appropriation of property under Texas Penal Code § 31.03.

70. Defendants committed theft from Plaintiff and Plaintiff's clients in violation of Texas Penal Code § 31.03. "A person who commits theft is liable for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code § 134.003.

71. Each of Defendants is a "person," which is defined, in part, as an individual. Tex. Civ. Prac. & Rem. Code § 134.002(1). "'Theft' means unlawfully appropriating property or

12

unlawfully obtaining services as described by Section 31.03 . . . [of the] Penal Code." *Id.* at (2). Under Tex. Pen. Code § 31.03, "(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. (b) Appropriation of property is unlawful if (1) it is without the owner's effective consent; [or] (2) the property is stolen and the actor appropriates the property knowing it was stolen by another." Tex. Pen. Code § 31.03 ("*Theft*"). Appropriate means "(A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or (B) to acquire or otherwise exercise control over property other than real property." *Id.* at § 31.01(4). Property is defined to include "tangible or intangible personal property . . . ; or [] a document, including money, that represents or embodies anything of value." *Id.* at § 31.01(5)(B)-(C).

72. Defendants violated Texas Penal Code § 31.03 by effectuating and carrying out their scheme since 2011. One or both Defendants knowingly and intentionally created bogus invoices to Defendant April Thompson for services Defendant James Thompson never rendered. Defendant April Thompson then knowingly submitted those invoices to FIA for payment with knowledge of the invoices' falsity and with the intent of committing theft from FIA and its clients.

73. Defendants unlawfully appropriated the property (money) of FIA and FIA's clients with the intent to deprive FIA and its clients of the same in violation of Texas Penal Code § 31.03(b)(1). Defendants did not have the consent of FIA or its clients to appropriate the monies they unlawfully obtained.

74. Defendants each also unlawfully appropriated FIA's property and the property of FIA's clients with intent to deprive them of the same in violation of Texas Penal Code § 31.03(b)(2). Each of Defendants stole money from FIA and FIA's clients and each of the Defendants appropriated the monies knowing it was stolen by another.

75. The Defendants' acts constitute a felony of the first degree because the amount

13

Defendants stole totals no less than $4 million. Texas Pen. Code §§ 31.03(e)(7) and 31.09.

76. Plaintiff's injury and damages resulted from Defendants' malice or actual fraud, which entitles Plaintiff to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003.

77. Further, FIA's injury and damages resulted from Defendants' felony theft in the first degree under the Texas Penal Code that was committed knowingly and intentionally, which exempts this claim from the cap on exemplary damages under Tex. Civ. Prac. & Rem. Code Section 41.008(c).

78. Defendants have violated the Texas Theft Liability Act and Defendants' wrongful conduct has damaged Plaintiff in an amount of no less than $4 million. Upon proof of actual damages, Plaintiff is entitled to additional statutory damages of up to $1,000 from each defendant under Texas Civil Practice & Remedies Code § 134.005(a)(1), as well as court costs.

## COUNT ELEVEN
## UNJUST ENRICHMENT

79. Plaintiff realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

80. Defendants personally profited from their fraudulent scheme.

81. By fraudulently presenting invoices for work never performed and accepting payment on same, Defendants received over $4 million from Plaintiff's clients. Plaintiff has agreed to indemnify its clients for these losses.

82. The principles of equity and fairness do not allow Defendants to retain the monies they obtained through their fraudulent scheme. Defendants must make Plaintiff whole and return the ill-gotten monies to Plaintiff.

83. Plaintiff is entitled to have a constructive trust imposed upon all the funds that Defendants received in connection with the fraudulent scheme.

84. As a direct and proximate result of Defendants' actions, Plaintiff has been damaged

in an amount to be determined at trial, but no less than $4 million

## COUNT TWELVE
### ACCOUNTING AND EQUITABLE AND INJUNCTIVE RELIEF

85. Plaintiff realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

86. Plaintiff requests an accounting of all funds unlawfully obtained and converted by Defendants.

87. Plaintiff has a reasonable and serious concern that Defendants have dispersed, and will continue to disperse, the monies they obtained through their fraudulent scheme. Accordingly, Plaintiff requests a constructive trust over any and all monies fraudulently obtained by Defendants pursuant to said scheme.

88. Plaintiff further requests preliminary and permanent injunctive relief to prevent Defendants from further dispersing any monies received by Defendants pursuant to said scheme.

## COUNT THIRTEEN
### APPOINTMENT OF RECEIVER

89. Plaintiff realleges the allegations in the foregoing paragraphs as though fully set forth herein.

90. Plaintiff has a reasonable and serious concern that Defendants acted, and continue to act, in furtherance of their fraudulent scheme.

91. Given the nature of Defendants' fraud, it is necessary that the Court appoint a receiver for any financial accounts in which monies were deposited as part of the aforesaid scheme and for any assets of the Defendants that may ultimately be used to refund Plaintiff.

## COUNT FOURTEEN
### PUNITIVE DAMAGES

92. Plaintiff realleges the allegations in the foregoing paragraphs as though fully set

forth herein.

93. Defendants' conduct, as particularized above, was willful, intentional, and reckless.

94. As a result of the foregoing misconduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial but in any event not less than $4 million.

## COUNT FIFTEEN
## ATTORNEYS' FEES

95. Plaintiff realleges the allegations in the foregoing paragraphs as though fully set forth herein.

96. Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble, time, and expense, thereby entitling Plaintiff to recover its attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11 and Tex. Civ. Prac. & Rem. Code § 134.005(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in its favor and against Defendants as follows:

(a) Compensatory damages against Defendants in an amount to be determined at trial;

(b) Punitive damages against Defendants in an amount to be determined at trial;

(c) All costs and expenses, including attorney's fees, against Defendants;

(d) Enter a temporary restraining order against all Defendants;

(e) Enter an interlocutory injunction against all Defendants;

(f) Order an Accounting of all funds received by Defendants as part of their fraudulent conduct;

(g) Place a constructive trust on all monies received by Defendants pursuant to their scheme;

(h) Appoint a Receiver over all real and personal property of Defendants; and

16

(i)     Such other relief as the Court shall deem just and proper.

Respectfully submitted this 14th day of May, 2019.

**EVERSHEDS SUTHERLAND (US) LLP**

/s/ *Giselle S. Guerra*
Giselle S. Guerra
Texas Bar No. 24075173
1001 Fannin Street, Suite 3700
Houston, TX 77002
Phone: (713) 470-6100
giselleguerra@eversheds-sutherland.com
S. Lawrence Polk *(pro hac admission pending)*
Georgia Bar No. 582959
Olga Greenberg *(pro hac admission pending)*
Georgia Bar No. 307731
999 Peachtree Street NE, Suite 2300
Atlanta, GA 30309
Phone: (404) 853-8000
larrypolk@eversheds-sutherland.com
olgagreenberg@eversheds-sutherland.com

**Counsel for Forest Investment Associates L.P.**