IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| FOREST INVESTMENT ASSOCIATES L.P.,<br><br>Plaintiff,<br><br>v.<br><br>APRIL THOMPSON, JAMES THOMPSON, JAMES THOMPSON TRUCKING, LLC, JAMES THOMPSON TRANSPORT, LLC, JAMES THOMPSON D/B/A JAMES THOMPSON RACING,<br><br>Defendants. | § § § § § § § § § § § § § § § § §   CIVIL ACTION NO. 5:19-CV-00065-RWS |

## ORDER

Before the Court is the parties' supplemental briefing (Docket Nos. 174, 180, 184) concerning the Court's order granting Plaintiff Forest Investment Associates L.P.'s Second Motion for Contempt Against Defendants April Thompson and James Thompson ("Defendants") (Docket No. 155) and Plaintiff's Unopposed Motion for Attorneys' Fees (Docket No. 173). Upon granting Plaintiff's Second Motion for Contempt (Docket No. 140), the Court determined sanctions against Defendants were appropriate. Docket No. 155 at 6.

The Court further ordered the parties to (1) meet and confer regarding a reasonable amount to compensate Plaintiff's attorneys' fees and (2) file supplemental briefing regarding an appropriate contempt fine to be imposed. *Id.* at 9. Plaintiff later filed the present motion for attorneys' fees and supplemental briefing regarding sanctions. Docket Nos. 173, 174, 184. Defendants filed a response to Plaintiff's supplemental briefing regarding an appropriate contempt

fine. Docket No. 180. Defendants did not, however, contest Plaintiff's Motion for Attorneys' Fees (Docket No. 173). The Court held a hearing regarding contempt sanctions on June 7, 2022.

For the reasons set forth below, Plaintiff's Motion for Attorneys' Fees (Docket No. 173) is **GRANTED**, and Defendants are **ORDERED** to comply with the Court's civil contempt sanctions as specified below.

## I.     ATTORNEYS' FEES

"Courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to a court in the enforcement of its decrees. The theory for allowing attorneys' fees for civil contempt is that civil contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977).

Courts use the well-established lodestar method to calculate attorneys' fees. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The lodestar method provides a two-step analysis that includes first calculating a lodestar by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for the work performed. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citation omitted). The lodestar formula provides "[t]he most useful starting point for determining the amount of a reasonable fee," and it is "an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

After calculating the lodestar, a court may then enhance or decrease the attorneys' fees based on the *Johnson* factors, which include a consideration of the attorneys' customary fees.[1]

---

[1] The *Johnson* factors include: (1) the time and labor required for litigation; (2) the novelty and complexity of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorneys had to refuse other work to litigate

*Black*, 732 F.3d at 502. When an attorney requests the lodestar be computed based on his customary billing rate, and the rate is not contested, the customary billing rate is *prima facie* reasonable. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

The lodestar amount is afforded "a strong presumption of . . . reasonableness[,]" and it "should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citation omitted); *see also Black*, 732 F.3d at 502. The party seeking an award of fees carries the burden of demonstrating the reasonableness of the requested award. *Louisiana Power & Light Co.*, 50 F.3d at 324. Though a court must typically hold an evidentiary hearing to resolve any factual disputes regarding the amount of fees requested, when there is no dispute as to the facts supporting a fee award or the amount thereof, the Court need not hold an evidentiary hearing. *Compare Salazar v. Maimon*, 750 F.3d 514, 522 (5th Cir. 2014), *with Cook*, 559 F.2d at 273.

Here, Plaintiff contends it incurred $15,033.00 in attorneys' fees in relation to filing its Second Motion for Contempt (Docket No. 140). Docket No. 173. Plaintiff submitted a declaration that specifies its attorneys' billing rates and itemizes the relevant number of hours its attorneys spent on the Second Motion for Contempt. Docket No. 173-1. Defendants do not dispute Plaintiff's present motion or the accompanying declaration. Having reviewed the motion (Docket Nos. 173), and because it is unopposed, the Court finds that Plaintiff's requested fee award is reasonable. There are no other factors justifying an adjustment of the lodestar amount. Plaintiff's

---

the case; (5) the attorneys' customary fees; (6) whether the fee was fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) whether the case was undesirable; (11) the type of attorney-client relationship and whether the relationship was longstanding; and (12) awards made in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The United States Supreme Court has stated that three of the *Johnson* factors (*i.e.*, the complexity of the issues, the results obtained and the preclusion of other employment) are presumably fully reflected and subsumed in the lodestar amount. *Heidtman*, 171 F.3d at 1043 (citing *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986)). The Supreme Court has also "barred any use of the sixth factor," whether the fee is fixed or contingent. *Walker v. U. S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citation omitted).

Unopposed Motion for Attorneys' Fees (Docket No. 173) is therefore **GRANTED**, and Plaintiff shall recover $15,033.00 for attorneys' fees.

## II. CIVIL CONTEMPT SANCTIONS

The Court next considers the parties' positions regarding an appropriate civil contempt fine. The proper aim of judicial sanctions for civil contempt is "full remedial relief." *McComb v. Jacksonville*, 336 U.S. 187, 193 (1949). "[T]he only limitation upon the sanctions imposed is that they be remedial or coercive but not penal." *Fla. Steel Corp. v. NLRB*, 648 F.2d 233, 239 (5th Cir. 1981). There are two types of civil contempt fines or sanctions, "coercive" and "compensatory." *United States v. Slaughter*, 900 F.2d 1119, 1125 (7th Cir. 1990) (citing *United States v. Mine Workers*, 330 U.S. 258, 303–04 (1947)). As their labels imply, coercive sanctions are intended to force the contemnor to obey a court order, and compensatory fines are intended to afford some party compensation for contemnor's failure to obey a court order. *Id.* Courts consider the following factors to impose a civil contempt sanction: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order. *Gaia Techs., Inc. v. Recycled Prod. Corp.*, 74 F.3d 1236 (5th Cir. 1995).

Plaintiff's Supplemental Brief in Support of its Second Motion for Contempt (Docket No. 174) proposes the following three alternative civil contempt fines and corresponding to opportunities to purge the proposed fines:[2]

> **Option No. 1:** A fine, payable to the Receiver and Plaintiff, in an amount equal to the outstanding Receiver compensation and expenses plus the outstanding attorneys' fees, wherein if the fine is not paid within 14 days of the Court's order, the Defendants are to be "confined at the nearest confinement facility until they are

---

[2] "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994). Accordingly, a flat, unconditional coercive fine "totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.*

to report for the sentences imposed by the United States District Court for the Northern District of Georgia, subject to avoidance or immediate release upon payment of the fine";

**Option No. 2:** A per diem fine, payable to the Court, in an amount equal to $100/day for each Defendant, wherein the payment is suspended until 14 days from the Court's order, and the per diem fine is purged and avoided upon payment to the Receiver and Plaintiff of the outstanding Receiver compensation and expenses plus the outstanding attorneys' fees; and

**Option No. 3:** A fine, payable to the Court, in an amount equal to the outstanding Receiver compensation and expenses plus the outstanding attorneys' fees, wherein the payment is suspended until 14 days from the Court's order, and the amount of the fine shall be reduced and avoided by each amount that Defendants pay to the Receivership Estate towards the outstanding Receiver compensation and expenses and the outstanding attorneys' fees.

*See* Docket No. 174 at 3–4. Plaintiff contends that each of the proposed sanctions will "encourage Defendants' compliance with the Court's [orders and] serve to compensate [Plaintiff and the Receiver] for losses caused by the Defendants concealing and diverting income from the Receivership Estate." Docket No. 174 at 4.

Defendants respond that their inability to comply with the Court's orders preclude Plaintiff's proposed sanctions.[3] Docket No. 180 at 2. Defendants specifically argue that the Receiver's prior quarterly status reports demonstrate they are unable to pay the outstanding Receiver compensation and attorneys' fees because they "have no funds, no property not already seized that can be sold, and no funds available to them from others"; and as such, they "should not be jailed for failing to do what they cannot do." *Id.* at 4–5. Defendants also argue that early

---

[3] In its reply brief concerning an appropriate contempt fine (Docket No. 184), Plaintiff interprets Defendants' related supplemental briefing as an opposition to its Second Motion for Contempt (Docket No. 140). Docket No. 184 at 2. Plaintiff accordingly argues that Defendants waived their opportunity to challenge its Second Contempt Motion. *Id.* The parties' arguments regarding the contempt finding itself are moot as the remaining issue before the Court is not whether Defendants should be held in contempt. That ship has sailed. Namely, the Court has already granted Plaintiff's Second Contempt Motion (Docket No. 140) and, therefore, found Defendants in contempt. *See* Docket No. 155. Rather, the remaining issue is what sanctions may be appropriately imposed against Defendants due to their contempt. In this regard, Plaintiff acknowledges that it did not oppose Defendants' request to file a belated supplemental brief regarding an appropriate contempt fine. Docket No. 184 at 2. Thus, the Court will consider Defendants' briefing to the extent that it relates to determining appropriate sanctions herein.

imprisonment for failure to pay an imposed civil contempt fine will not coerce Defendants' compliance with the Court's orders because they are "soon headed to prison." *Id.* at 5. In sum, Defendants contend that the correct action for the Court "is nothing." *Id.* at 4–5.

Plaintiff replies that Defendants' arguments are without merit because Defendants continued to willfully violate this Court's orders before and after being held in contempt and "drained all available funds from their [bank account] in their attempt to render themselves judgment proof." Docket No. 184 at 3.[4] Plaintiff further argues there is no reliable evidence to support Defendants' assertion that they lack the resources to pay the proposed fines. *Id.* at 6. Plaintiff specifically contends "the Receiver's reports cannot be relied upon as an accurate indicator of [Defendants] financial resources," and "[g]iven their history of deception, sizeable cash withdrawals, selling gold coins, and mowers and otherwise violating the Court's orders," the Court may infer Defendants have hidden money and other assets. *Id.*

Here, it is undisputed that Defendants willfully and repeatedly disregarded this Court's orders when they concealed their assets and diverted funds from the Receivership Estate. *See, e.g.*, Docket No. 155 at 4. Defendants' conduct resulted in harm to both Plaintiff and the Receiver who are collectively owed over $30,000 in outstanding compensation and fees.[5] Thus, the first and fourth factors strongly weigh in favor of imposing a civil contempt sanction. The nature of such

---

[4] Plaintiff presents evidence that Defendants continued to dissipate funds from the Receivership Estate leading up until the day of the Court's second contempt hearing and after the Court's second order finding Defendants in contempt. Docket No. 184-1 (Defendants' bank statements).

[5] On August 12, 2019, Randy Moore was appointed Receiver in the above-captioned cause of action. Docket No. 63. The Court ordered that the Receiver shall submit to the Court monthly detailed applications for compensation and expense reimbursement. *Id.* at 16. The Court further ordered that, upon Court approval, the Receiver may pay and reimburse himself from the Receivership Estate. *Id.* The Receiver has not, however, received his compensation given a lack of Receivership funds, which is in part due to Defendants' conduct. Docket No. 155 at 3. Accordingly, the Receiver is owed $16,227.28 for outstanding compensation and payment of expenses. Docket No. 175 at 2. Similarly, in addition to the attorneys' fees awarded herein, Plaintiff is owed $17,066.50 in outstanding attorneys' fees. Docket No. 107 at 8.

sanctions is further guided by the remaining factors—*i.e.*, the probable effectiveness of the sanction and the financial resources of the contemnor and the burden the sanctions may impose.

Upon considering the second and third factors described above, Plaintiff's proposed sanctions and corresponding purgation requirements—each of which require the payment of a large monetary sum—are not best suited for the present situation. Specifically, a civil contempt fine is unlikely to coerce Defendants' compliance with the Court's prior orders if Defendants are unable to satisfy the court-ordered financial obligations. Likewise, any corresponding incarceration for failure to pay a court-ordered civil contempt fine is also improper. *Maggio v. Zeitz*, 333 U.S. 56, 72 (1948) ("Of course, to jail one for a contempt for omitting an act he is powerless to perform would . . . the proceeding purely punitive, to describe it charitably.").

Furthermore, the Court has no means to determine whether Defendants have concealed additional assets that enable them to either pay a civil contempt fine or the outstanding compensation and attorneys' fees owed to the Receiver and Plaintiff. And absent such evidence, the Court declines to impose a civil contempt fine based on a mere "inference" that Defendants have "hidden money" that enables compliance, as Plaintiff proposes, especially given the record before the Court which suggests Defendants' inability to comply.[6] Docket No. 184 at 6.

However, while the Court acknowledges Defendants' potentially insufficient financial resources, Defendants' argument that the Court should accordingly take no action is clearly without merit. Assuming arguendo that Defendants do not possess the funds to pay the previously awarded compensation and fees, Defendants certainly possess the ability to refrain from

---

[6] The Receiver's Quarterly Status Report dated April 28, 2022 (Docket No. 175) and Defendants' bank statements, as produced in Plaintiff's supplemental briefing (Docket No. 184), do not demonstrate Defendants' ability to satisfy the outstanding court-ordered financial obligations even if Defendants had refrained from withdrawing additional funds from their bank account.

absconding with funds from the Receivership Estate. Thus, contrary to Defendants' position, the present circumstances hardly warrant doing "nothing" in response.

Hence, the Court shall order Defendants to pay compensatory sanctions, including the above-awarded attorneys' fees, reimbursement to the Plaintiff for payment of the Receiver's outstanding compensation and expenses and post-judgment interest on all outstanding compensation and fees. *Dynamic Sports Nutrition, Inc. v. Roberts*, No. CV H-08-1929, 2009 WL 10711815, at *3 (S.D. Tex. July 14, 2009) ("A finding of contempt regardless of compliance is more common in the context of compensatory orders than coercive orders.") (citation omitted).

Moreover, given that Defendants have demonstrated a propensity to violate this Court's orders, should Defendants fail to comply with the Court's Injunction and Receivership orders (Docket Nos. 62, 97) between now and their scheduled incarceration dates—which may still be one to two months away—the Court may further order that Defendants be taken into custody, upon an emergency motion by Plaintiff, if appropriate and the circumstances require it.[7] *See United States v. Brewer*, 998 F.2d 1014 (5th Cir. 1993) (upholding a finding of civil contempt ordering the defendants to comply with the Court's order or face incarceration). Accordingly, it is

**ORDERED** that Plaintiff's Unopposed Motion for Attorneys' Fees (Docket No. 173) is **GRANTED**, and Plaintiff shall recover $15,033.00 from Defendants April Thompson and James Thompson for attorneys' fees. It is further

---

[7] The Court acknowledges its duty to "exercise [t]he least possible power adequate to the end proposed" in imposing contempt sanctions. *Shillitani v. United States*, 384 U.S. 364, 371 (1966) (quotations omitted). Defendants' continued failure to comply with the Court's orders may, however, justify incarceration as a "last resort." *See In re May Day Movers, LLC*, No. 20-02621-NPO, 2021 WL 1941655, at *5 (Bankr. S.D. Miss. Jan. 13, 2021) ("Because coercive incarceration is the most severe sanction available for civil contempt, most courts impose incarceration as a last resort."); *see also In re Free*, 466 B.R. 48, 62 (Bankr. W.D. Pa. 2012) (imposing per diem fines but noting "[i]f the Court is convinced that compliance can be obtained only by incarceration, [it] will not hesitate to order the [contemnor] to be taken into custody.").

**ORDERED** that the Receiver shall recover $16,227.28 from Plaintiff for the outstanding compensation and payment of expenses owed to the Receiver, and such payment shall be assessed as costs against Defendants. It is further

**ORDERED** that Plaintiff's reimbursement for the above-awarded compensation paid to the Receiver and the outstanding and concurrent attorneys' fees awarded to Plaintiff shall bear interest at the federal post-judgment interest rate until paid by Defendants. It is further

**ORDERED** that, within one (1) business day following the receipt of each Defendants' scheduled date to report for incarceration pursuant to their convictions in the Northern District of Georgia, each Defendant shall notify the Court of such reporting date by filing a notice on the Court's docket.

**So ORDERED and SIGNED this 8th day of June, 2022.**

*[Signature: Robert W. Schroeder III]*

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE